IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOLORES PRIETO,

    Plaintiff,

vs.

No. CIV S-09-901 KJM EFB

U.S. BANK NATIONAL ASSOCIATION,
a Delaware Corporation, et al.,

    Defendants.

ORDER

/

On March 2, 2011, the court heard argument on the motion for summary judgment filed by defendant U.S. Bank National Association. Emilie C. Woodhead and Maria C. Rodriguez of Winston Strawn LLP appeared for defendant; Christian Schreiber of Chavez & Gertler LLP appeared for plaintiff.

I. Summary Judgment Standards

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

1

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

II. Factual and Procedural Background

The facts of this case are largely undisputed; the parties' disagreement centers on the effect of an earlier class action suit.

Plaintiff Dolores Prieto began working for defendant U.S. Bank in May 2005. Def.'s Undisputed Fact (DUF) 2.[2] In November 2006, she was promoted to an "In-Store Branch

---

[2] As noted above, most of the facts are undisputed. When there is no dispute, the court will refer to them as "DUF" and the appropriate number.

Manager" of a retail bank inside a supermarket. DUF 3. She was terminated from her position in January 2009. DUF 4.[3]

On April 1, 2009, she filed this putative class action, based on this court's diversity jurisdiction. ECF No. 2 at 4 ¶ 14. Plaintiff claims that she and other In-Store Branch Managers employed by defendant in California had been misclassified as exempt from overtime. DUF 5. The complaint seeks relief for failure to pay overtime compensation, failure to provide rest and meal breaks, failure to pay all wages due at termination under California Labor Code § 203, unlawful business practices under California Business and Professions Code § 17200, *et seq.*, and failure to provide accurate itemized wage statements. DUF 6. The court dismissed the class claims. DUF 8-9.

On April 4, 2007, a case entitled *Ross v. U.S. Bank* was filed in Alameda County Superior Court; it was removed to the Northern District of California on June 7, 2007. DUF 10-11. In its notice of removal, defendant U.S. Bank identified the federal court's jurisdiction over the overtime and rest and meal break claims brought under the Fair Labor Standards Act (FLSA), its supplemental jurisdiction over the state law claims, and diversity under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). ECF No. 39-1 at 4-5, ¶¶ 9-14. The third amended complaint in *Ross* presented wage and hour claims on behalf of employees, including the failure to pay overtime compensation, failure to provide rest and meal breaks, failure to pay all wages due at termination under California Labor Code § 203, unlawful business practices under California Business and Professions Code § 17200, *et seq.*, and failure to provide accurate itemized wage statements. DUF 12. The plaintiffs noted the court had federal question jurisdiction over the FLSA claims, supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, independent subjection matter jurisdiction under the Class Action Fairness Act,

---

[3] Plaintiff does not dispute this even though her declaration says she worked for U.S. Bank until January 2010. This appears to be a typographical error; her first amended complaint alleges that she was terminated on or about January 29, 2009. ECF No. 31 ¶ 7.

3

28 U.S. C. § 1332(d)(2) (CAFA), and added that the named plaintiffs were each diverse with respect to U.S. Bank. ECF No. 39-2 at 6-7.

The Northern District granted conditional class certification and defined the two *Ross* classes as (1) all hourly employees of U.S. Bank who worked at a U.S. Bank California in-store branch, during a Sunday shift, during the period April 9, 2003, through the date of judgment in that case; and (2) all hourly employees of a U.S. Bank who worked a shift of more than five hours at a U.S. Bank California in-store branch during the same period. DUF 14. Plaintiff Prieto was a member of these classes. DUF 15.

On January 26, 2010, Class Notice was sent to all class-members (those who held a non-exempt position in California during the relevant time period), including Prieto, at her most recent address. DUF 16, 18. The notice was addressed to "ALL PERSONS WHO ARE EMPLOYED OR WHO, SINCE APRIL 9, 2003, HAVE BEEN EMPLOYED IN THE STATE OF CALIFORNIA BY U.S. BANK AS AN HOURLY-PAID IN-STORE EMPLOYEE." Def.'s Request for Judicial Notice (DRJN), ECF No. 38-2 at 6. The notice identified the two classes conditionally certified by the court and described the relief sought on behalf of the class members. DRJN, ECF No. 38-1 at 7. It included information on opting-out of the class:

> **If you wish to remain a Class Member and have your interests represented by Class Counsel approved by the Court, you do not need to take any action at this time.** You will receive further notices as the case progresses. If you remain a Class Member, you will be legally bound by any decision, favorable or unfavorable, in this lawsuit. If you remain a Class Member, and the Plaintiffs obtain money as a result of a trial or a settlement with respect to an issue that pertains to you, you will be notified about the procedure for submitting a claim for payment.

ECF No. 38-1 at 8 (emphasis in original). It continued "**if you want to exclude yourself from the Class, you must make your request in writing**. . . . If you do not exclude yourself from this lawsuit, any judgment rendered by the Court or jury, whether favorable or not, will be binding upon you." *Id*. (emphasis in original).

Plaintiff did not opt out of the class. DUF 19.

4

The parties settled the *Ross* case in 2010, and on March 31, 2010, entered into a Settlement Agreement on behalf of all members of the conditionally certified classes. DUF 20-21. The *Ross* settlement defined all "Participating Class Members" as those class members "to whom notice shall have been sent according to the terms of this Settlement Agreement, who do not timely opt out." DUF 22.

The *Ross* agreement provides in pertinent part:

> 6. <u>Release of Claims</u>. Prior to receiving a Class Payment, a Participating Class Member will be required to sign a Claim Form and Release of Claims which includes a release under federal, state, and local law relating to these claims: payment of wages, payment of overtime wages; payment of minimum wages; provision of meal and rest periods; payment of wages in a timely manner; reconciliation from wages resulting from the Bank's "pay current" practice; itemized wage statements; failure to timely pay all wages due at the time of termination; breach of contract; conversion; unfair business practices related to the released wage and hour claims; liquidated damages under the Fair Labor Standards Act; penalties under the California Labor Code, including PAGA penalties and waiting time penalties; and claims for costs, interest and attorneys' fees relating to any of these claims. The release will include all claims from April 9, 2003, through the date that the Court issues its final order granting approval of the Parties' Joint Stipulation of Settlement and Release (the "Effective Date").

ECF No. 39-4 at 17. The settlement agreement is fully integrated and states it sets forth the "entire understanding" of the parties and can be amended only by a writing signed by all the parties. DUF 25. Appended to the settlement agreement is a "Confidential Settlement And Release Agreement," signed by class plaintiff Ross, which includes a paragraph releasing U.S. Bank "from any and all claims, actions, causes of action, rights or damages (including claims for wages, penalties, interest, bonuses, or paid-time-off benefits), . . . which the Named Plaintiff may have known or unknown, or later discovered, which arose prior to the date the Named Plaintiff signs this Agreement." ECF No. 39-4 at 24. It also includes an advisement under California

/////

Civil Code § 1542, noting that the Named Plaintiff

> understands that section 1542 gives her the right not to release existing claims of which she is presently unaware, unless she voluntarily chooses to waive this right. Having been so apprised, the Named Plaintiff nevertheless voluntarily elects to, and does, waive the rights described in section 1542, and elects to assume all risks for claims that now exist in her favor, known or unknown, relating to the subject of this Agreement.

ECF No. 39-4 at 24-25. There is no similar release signed by plaintiff in this case.

A "Clarification Regarding Settlement Agreement" was filed on May 12, 2010:

> Section 6 of the Settlement Agreement states in part: "Prior to receiving a Class Payment, a Participating Class Member will be required to sign a Claim Form and Release of Claims which includes a release under federal state and local law relating to these claims: payment of wages; . . . ; breach of contract; conversion; unfair business practices related to the released wage and hour claims; . . . ."
>
> Similarly, Section 9.3 of the Settlement Agreement states in part: "Notice to the Class Members will, at a minimum: . . . c. Advise Participating Class Members that, if approved, the settlement will release under federal, state and local law claims relating to: Payment of wages; . . . breach of contract; conversion; unfair business practices related to the released wage and hour claims; . . . ."
>
> The words "breach of contract; conversion; unfair business practices related to the released wage and hour claims in Sections 6 and 9.3 of the Settlement Agreement were intended by the parties to state, and should be interpreted to state, "breach of contract, conversion and unfair business practices related to the released wage and hour claims."

ECF No. 39-5 at 6.

The Northern District granted preliminary approval of the proposed settlement on May 7, 2010, and authorized that notice be sent to the class members. DUF 28. The class

/////

/////

/////

/////

6

1 administrator mailed a notice to plaintiff on July 5, 2010.  DUF 29.  This notice says in pertinent

2 part:

> **Settlement Payment**.  Defendant has agreed to pay all Class Members in accordance with the terms of the Settlement Agreement, after final approval of the Settlement.  These Settlement payments will be distributed approximately 30 days after the effective date of the final approval . . . .
>
> **. . . your gross share of the Settlement will be approximately $902.72 . . . .**
>
> **Release of Claims**.  If approved, the Settlement will release claims under federal, state, and local law relating to:  payment of wages, payment of overtime wages; payment of minimum wages; provision of meal and rest periods; payment of wages in a timely manner; reconciliation from wages resulting from the Bank's "pay current" practice; itemized wage statements; failure to timely pay all wages due at the time of termination; breach of contract; conversion; unfair business practices related to the released wage and hour claims; liquidated damages under the Fair Labor Standards Act; penalties under the California Labor Code, including PAGA penalties and waiting time penalties; and claims for costs, interest and attorneys' fees relating to any of these claims through the effective date of the Settlement.

15 ECF No. 38-2 at 16 (emphasis in original).  There is no carve-out in the release for claims that

16 class members might have for periods when they worked for U.S. Bank in non-class positions

17 during the relevant time period.  DUF at 32.  The notice says that "the judgment will bind all

18 Class Members," and informed class members of their right to object to the settlement by

19 August 5, 2010, or to enter the action with their own counsel.  ECF No. 38-2 at 17; DUF at 34-

20 35.  Plaintiff did not object or enter the action on her own.

21        The Northern District granted final approval of the *Ross* settlement on

22 September 29, 2010, after finding that the settlement was fair, reasonable and adequate and that

23 plaintiffs had satisfied the standards for final approval of a class action settlement under federal

24 /////

25 /////

26 /////

7

law. DUF 27-38.[4] The court found that the notices met the necessary procedural requirements and complied with due process. DUF 40. It finally found that "all Class Members who did not timely and properly execute a Request for Exclusion are bound by this judgment and Order." DUF at 41. It again defined the class as "any and all non-exempt employees of U.S. Bank who worked at a U.S. Bank California in-store branch from April 9, 2003, through May 7, 2010," and a "Participating Class Member" as one "who did not properly and timely execute a Request for Exclusion." ECF No. 39-7 at 5. The court concluded:

> With this final approval of the proposed settlement, it is hereby ordered that, as to all Participating Class Members, any and all federal, state, and local law claims against U.S. Bank from April 9, 2003, through the date the Court signs this Order, relating to: payment of wages; payment of overtime wages; payment of minimum wages; provision of meals and rest periods; payment of wages in a timely manner; reconciliation from wages resulting from the Bank's "pay current" practice; itemized wages statements; failure to timely pay all wages due at the time of termination; breach of contract, conversion, and unfair business practices related to the wage and hour claims; liquidated damages under the Fair Labor Standards Act; penalties under the California Labor Code, including PAGA penalties and waiting time penalties; and claims for costs, interest and attorneys' fees relating to any of these claims, are hereby released.

ECF No. 39-7 at 6.

III. Analysis

Defendants argue that the release in the *Ross* class action covers plaintiff's claims in the instant action. Plaintiff counters that she did not sign a release because that was not a condition of the settlement, that the question therefore is one of preclusive effect and that she is

---

[4] Plaintiff has submitted a "Supplemental Declaration" from class counsel Kevin Barnes, filed in support of the final approval motion in *Ross*. Barnes recounts a conversation with counsel in a case of an hourly employee who later became an exempt employee and that lawyer's concern that the *Ross* settlement would bind his client. Barnes says, "I want to put it on the record that our case in no way releases any workweek of a US Bank employee in an exempt position as that was not litigated in this case and is not released." ECF No. 42-3 at 9 ¶ 3. Although parol evidence may be admissible in a challenge to the scope of a release "to prove a meaning to which the language is 'reasonably susceptible,'" *Winet v. Price*, 4 Cal.App.4th 1159, 1167 (1992), the court does not find it necessary to consider Barnes' declaration to resolve the issues in this case.

8

1 not barred under principles of res judicata and/or collateral estoppel. She adds that finding the
2 *Ross* settlement preclusive would violate her due process right to reasonable notice. Defendants
3 contend that even if the issue must be analyzed under doctrines of preclusion, res judicata bars
4 the instant action and that the *Ross* notice complied with due process.

5         The parties' contentions frame the issues in this case, for "a suit can be barred by
6 the earlier settlement of another suit in either of two ways: res judicata or release." *Nottingham*
7 *Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31 (1st Cir. 1991).

8         Plaintiff argues that federal common law governs the preclusive effect of the *Ross*
9 settlement. ECF No. 42 at n.7. Neither party addresses whether state or federal law controls the
10 determination whether the underlying claims are barred by a release; plaintiff cites both state and
11 federal cases, while defendant's discussion of the release is not extensive.

12         Plaintiff is correct that federal common law governs the preclusive effect of a
13 federal court judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). This does not mean,
14 however, that federal preclusion law controls in every situation. In *Semtek Int'l. v. Lockheed*
15 *Martin Corp.*, 531 U.S. 497, 508 (2001), the Court held that the preclusive effect of the order of
16 a federal court, sitting in diversity, was governed by federal common law, which in turn can
17 incorporate the state law. *See also Taylor*, 553 U.S. at 891 n.4. As the *Semtek* court explained,

> Since state, rather than federal, substantive law is at issue there is
> no need for a uniform federal rule. . . . This is, it seems to us, a
> classic case for adopting, as the federally prescribed rule of
> decision, the law that would be applied by the state courts in the
> State in which the federal diversity court sits.

21 *Semtek*, 531 U.S. at 508. The court recognized that this general rule would not apply "in
22 situations in which the state law is incompatible with federal interests." When there is no such
23 conflict, however, "there is no conceivable federal interest" in giving a determination "more
24 effect in other courts than the California courts themselves would impose." *Id.* at 509.

25         Ninth Circuit authority suggests that California state courts determine the
26 preclusive effect of a prior federal court judgment by applying federal standards. *Constantini v.*

9

*Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("California law . . . determines the res judicata effect of a prior federal court judgment by applying federal standards"); *Murray v. Sears, Roebuck and Co.*, 2010 WL 3490214, at *2 (N.D. Cal. 2010) (same). California case law is not in accord: California courts will determine the preclusive effect of a federal diversity judgment under California law if that law is "compatible with federal interests." *Louie v. BFS Retail and Commercial Operations, LLC*, 178 Cal.App.4th 1544, 1553-54 (2009); *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal.App.4th 1497 (2008) (applying California law without discussing whether prior federal action was based on diversity); *see generally Rehabilitation Associates, Inc. v. Nautilus, Inc.*, 2011 WL 1086066, at *5-6 (S.D. Cal. 2011) (collecting cases; declining to apply federal preclusion doctrine). Jurisdiction in the *Ross* action was based on federal question and supplemental jurisdiction, as well as on the diversity provisions of the CAFA. The settlement itself is based largely on the state law claims advanced by the named plaintiffs. In these circumstances, California's preclusion doctrines should govern the resolution of the issues. 8B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4472 at 374 (2d ed. 2002).

A. Release

In this case, the settlement agreement includes a paragraph entitled "Release Of Claim," which covers "claims under federal, state, and local law relating to: payment of wages, payment of overtime wages; payment of minimum wages; provision of meal and rest periods; payment of wages in a timely manner; reconciliation from wages resulting from the Bank's 'pay current' practice." It is undisputed that plaintiff did not sign any document entitled "release." She argues there is no release without a signed document, but has cited no authority in support of her position. Defendant similarly cites no authority suggesting that the idea of release, rather than issue preclusion, governs resolution of the issue before the court in the absence of a signed release.

Some lack of clarity may stem from the fact that "release" is both a concept and a document:

> 1. Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced <the employee asked for a release from the noncompete agreement>. — Also termed discharge; surrender.
> 2. The relinquishment or concession of a right, title, or claim <Benson's effective release of the claim against Thompson's estate precluded his filing a lawsuit>. . . . 3. A written discharge, acquittance, or receipt; specif., a writing — either under seal or supported by sufficient consideration — stating that one or more of the worker's contractual or compensatory rights are discharged <Jones signed the release before accepting the cash from Hawkins>. • Beneficiaries of an estate are routinely required to sign a release discharging the estate from further liability before the executor or administrator distributes the property.

*Black's Law Dictionary* (9th ed. 2009).  California courts interpret releases according to contract principles, noting that "[t]he general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is . . . bound by its contents. . . ." *Jefferson v. Calif. Department of Youth Authority*, 28 Cal.4th 299, 303 (2002) (interpreting a worker's compensation release); *see also* Cal. Civ. Code § 1542 ("a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release . . . ."). This suggests that to be binding, a release must be signed. *See Allan v. Snow Summit, Inc.*, 51 Cal.App.4th 1358, 1374 (1996) (distinguishing another case about sports releases by noting that "[t]here was no valid release in that case . . . because no one signed the release."). The cases cited by defendant also suggest that to be binding, a release must be signed. *See, e.g., Jimenez v. JP Morgan Chase & Co.*, 2008 WL 2036896, at *1 (S.D. Cal. 2008) (plaintiff's signed release barred later action); *In re Marriage of Hasso*, 229 Cal.App.3d 1174, 1778 (1991) (parties executed marital settlement agreements); *Reynov v. ADP Claims Services Group*, 2007 WL 5307977, at *1 (N.D. Cal. 2007) (plaintiff signed letter agreement and release).  It is undisputed that plaintiff did not execute a release in this case.

/////

1    Even if the court construes the settlement provisions of the *Ross* class action as a
2 release, there are material issues of fact as to its scope. In *Butler v. Vons Companies, Inc.*,
3 140 Cal.App.4th 943 (2006), the court considered a release signed by plaintiff and his union
4 representative on one hand and his employer on the other. Despite the language in the release
5 waiving the parties' rights under California Civil Code § 1542, the Court of Appeal found it did
6 not bar plaintiff's later suit for harassment or discrimination because the scope of the waiver was
7 ambiguous:

> The fact that UFCW Local 770 is a party to the Release Agreement
> suggests that the Release Agreement is limited to matters dealing
> with the Furman grievance. Local 770's negotiation and execution
> of the Release Agreement reasonably suggests that Butler's
> personal interests, apart from the Furman grievance, are not subject
> to the Release Agreement. This is so because Local 770's standing
> was limited to negotiating the Furman grievance. Nothing
> suggests that Local 770 was authorized to negotiate and settle any
> claim or claims other than the Furman grievance.

*Id*. at 948. Similarly, the agreement in this case must be read in its context: it was negotiated by hourly employees on behalf of other hourly employees, as defined by the two classes. Defendant has pointed to nothing beyond the language of the agreement itself suggesting that the named class members had any authority to negotiate a settlement on behalf of non-exempt employees.

B.  Res Judicata

Cases recognizing the preclusive effect of class action settlements, even those using the word "release," often employ the doctrines of claim or issue preclusion. *See, e.g., Villacres v. ABM Industries*, 189 Cal.App.4th 562, 588 (2010); *Louie v. BFS Retail and Commercial Operations, LLC*, 178 Cal.App.4th 1544, 1550, 1559 (2009).

"In California, res judicata precludes a plaintiff from litigating a claim if: the claim relates to the same 'primary right' as a claim in a prior action, the prior judgment was final and on the merits, and the plaintiff was a party or in privity with a party in the prior action."

/////

/////

*Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985). Under California's primary rights theory:

> [A] cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists of a breach of such primary right and duty. . . .[I]f two actions involve the same injury to plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.

*Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (internal citations, quotations omitted). The critical focus is on the harm suffered. *Id.* "If the 'primary right' sought to be vindicated in a subsequent suit is the same as that in an earlier suit, the second action will be precluded under California law." *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004), *quoting Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888 (2002). A single cause of action arises from the harm suffered rather than on the legal theory advanced and does not depend upon the remedy sought. *Slater v. Blackwood*, 15 Cal.3d 791, 797 (1975); *McDowell v. Watson*, 59 Cal.App.4th 1155, 1158 (1997). Moreover, "even though two suits involve the same nucleus of facts, they do not necessarily raise the same cause of action under California law." *Maldonado*, 370 F.3d at 953.

Plaintiff does not dispute the fact that there was a final judgment in the *Ross* case, but argues that the instant cause of action is different than that litigated in *Ross*. Defendant insists that the same primary right is involved: the right to be compensated for earned overtime and for meal and rest periods that were denied. ECF No. 44 at 14. To resolve this dispute, the court "must compare the two actions, looking at the rights which are sought to be vindicated and the harm for which redress is claimed." *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Association*, 60 Cal.App.4th 1053, 1067 (1998).

The plaintiffs in *Ross*, hourly employees of U.S. Bank, alleged that they were regularly deprived of "duty-free rest periods" and "uninterrupted meal periods," were not permitted to leave the premises during meal periods, and were not paid for the missed rest

periods or interrupted meal periods or for off-the-clock work. ECF No. 39-2 at 6 ¶ 16. In addition, they alleged that U.S. Bank improperly made deductions from the plaintiffs' wages under the heading "Lost Time" and permitted them to work off the clock when opening or closing the branch. *Id*. In addition, plaintiffs were often forced to clock out after eight hours so that defendant could avoid paying overtime. *Id*. When plaintiffs did work overtime, defendant failed to pay them the increased hourly rate for time in excess of forty hours a week. *Id*. at 5-6. Other plaintiffs were not given all wages due within seventy-two hours of their last days of employment. *Id*. at 5. They alleged that defendant failed to pay wages, failed to pay minimum wage, failed to pay overtime to hourly employees, made unauthorized deductions from their wages, failed to provide rest and meal periods, failed to pay wages promptly at the end of employment, breached a contract, failed to provide accurate wage statements, and engaged in unfair competition. *Id*. at 17-28.

The first amended complaint in the instant case alleges that defendant has a policy of classifying certain employees as exempt, which resulted in its refusal to pay her overtime wages stemming from its failure to provide her meal and rest periods. ECF No. 31 at 2. Plaintiff raises causes of action similar to those in *Ross*: failure to pay overtime, failure to provide rest and meal periods, failure to pay her for these periods promptly after she left defendant's employment, and unfair competition.

There is much overlap in the two actions, starting with the similarity of the facts and the Labor Code violations presented through the requests for payment of lost wages. In the case proceeding in this court, however, the harm flowed from defendant's alleged misclassification of plaintiff and could have occurred even if it honored all its obligations concerning meal and rest periods and off the clock work to hourly employees; in *Ross*, the harm flowed from defendant's refusal to pay hourly employees' wages due under the provisions of the Labor Code. The harm in the instant case is the misclassification, which led to the alleged

/////

failure to pay, while the harm in *Ross* was the failure to pay.  Because the actions involve different primary rights, res judicata does not bar the instant suit.

        IT IS THEREFORE ORDERED that defendant's motion for summary judgment (ECF No. 38) is denied.

DATED:  June 2, 2011.

                              UNITED STATES DISTRICT JUDGE