1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8  DOLORES PRIETO,

9            Plaintiff,                     No. CIV S-09-901 KJM EFB

10       vs.

11  U.S. BANK NATIONAL ASSOCIATION,
   a Delaware Corporation, et al.,
12
            Defendants.                     ORDER
13  _____/

14              On August 31, 2011, the court heard argument on defendants' motion for

15  reconsideration of this court's order of June 3, 2011 denying defendant's motion for summary

16  judgment.  The court grants defendants' motion for reconsideration (ECF No. 51), vacates its

17  order on summary judgment (ECF No. 49), and upon reconsideration denies defendants' motion

18  for summary judgment (ECF No. 38).

19  I.  Reconsideration

20              "A district court's power to rescind, reconsider, or modify an interlocutory order

21  is derived from the common law, not from the Federal Rules of Civil Procedure." *City of Los*

22  *Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *McConnell v. Lassen*

23  *County*, No. CIV. S-05-0909 FCD DAD, 2008 WL 4482853, at *2 (E.D. Cal. Oct. 3, 2008)

24  ("Where reconsideration of a non-final order is sought, the court has 'inherent jurisdiction to

25  modify, alter, or revoke it.'" (quoting *United States v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir.

26  2000)).  In addition, Federal Rule of Civil Procedure 54(b) authorizes courts to revise "any order

or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties .. . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Regents v. University of Calif. v. Bernzomatic*, No. CIV. 2:10-cv-1224 FCD GGH, 2011 WL 666912, at *2 (E.D. Cal. Feb. 11, 2011) (relying on Rule 54 in deciding whether to reconsider the denial of summary judgment). Reconsideration is appropriate where there has been an intervening change in controlling law, new evidence has become available, or it is necessary to correct clear error or prevent manifest injustice. *Cachil Dehe Band of Wintun Indians v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *School Dist. No. 1J Multnomah County, Oregon v. AC&S Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). In this case, the court grants defendants' motion for reconsideration in order to clarify its prior ruling regarding the scope of the class action release defendants claim forecloses the instant action.

II. <u>Summary Judgment Standards</u>

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

1   particular parts of materials in the record . . . or show [] that the materials cited do not establish

2   the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

3   evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

4   ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt

5   as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of

6   *material* fact . . . .  Only disputes over facts that might affect the outcome of the suit under the

7   governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at

8   247-48 (emphasis in original).

9           In deciding a motion for summary judgment, the court draws all inferences and

10  views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

11  587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

12  whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

13  issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities*

14  *Service Co.*, 391 U.S. 253, 289 (1968)).

15  III.  Factual and Procedural Background

16          The facts of this case are largely undisputed; the parties' disagreement centers on

17  the effect of an earlier class action suit.

18          Plaintiff Dolores Prieto began working for defendant U.S. Bank in May 2005.

19  Def.'s Undisputed Fact ( DUF) 2.[2]  In November 2006, she was promoted to an "In-Store Branch

20  Manager" of a retail bank inside a supermarket.  DUF 3.  She was terminated from her position

21  in January 2009.  DUF 4.[3]

22  /////

---

24       [2] As noted above, most of the facts are undisputed.  When there is no dispute, the court
will refer to them as "DUF" and the appropriate number.

25       [3] Plaintiff does not dispute this even though her declaration says she worked for U.S.
26  Bank until January 2010.  This appears to be a typographical error; her first amended complaint
alleges that she was terminated on or about January 29, 2009.  ECF No. 31 ¶ 7.

1    On April 1, 2009, she filed this putative class action, based on this court's

2  diversity jurisdiction.  ECF No. 2 at 4 ¶ 14.  Plaintiff claims that she and other In-Store Branch

3  Managers employed by defendant in California had been misclassified as exempt from overtime.

4  DUF 5.  The complaint seeks relief for failure to pay overtime compensation, failure to provide

5  rest and meal breaks, failure to pay all wages due at termination under California Labor Code

6  § 203, unlawful business practices under California Business and Professions Code § 17200,

7  *et seq.*, and failure to provide accurate itemized wage statements.  DUF 6.  The court dismissed

8  the class claims.  DUF 8-9.

9    On April 4, 2007, a case entitled *Ross v. U.S. Bank* was filed in Alameda County

10  Superior Court; it was removed to the Northern District of California on June 7, 2007.  DUF

11  10-11.  In its notice of removal, defendant U.S. Bank identified the federal court's jurisdiction

12  over the overtime and rest and meal break claims brought under the Fair Labor Standards Act

13  (FLSA), its supplemental jurisdiction over the state law claims, and diversity under the Class

14  Action Fairness Act, 28 U.S.C. § 1332(d)(2).  ECF No. 39-1 at 4-5, ¶¶ 9-14.  The third amended

15  complaint in *Ross* presented wage and hour claims on behalf of employees, including the failure

16  to pay overtime compensation, failure to provide rest and meal breaks, failure to pay all wages

17  due at termination under California Labor Code § 203, unlawful business practices under

18  California Business and Professions Code § 17200, *et seq.*, and failure to provide accurate

19  itemized wage statements.  DUF 12.  The plaintiffs noted the court had federal question

20  jurisdiction over the FLSA claims, supplemental jurisdiction over the state law claims under 28

21  U.S.C. § 1367, independent subjection matter jurisdiction under the Class Action Fairness Act,

22  28 U.S.C. § 1332(d)(2) (CAFA), and added that the named plaintiffs were each diverse with

23  respect to U.S. Bank.  ECF No. 39-2 at 6-7.

24    The Northern District granted conditional class certification and defined the two

25  *Ross* classes as (1) all hourly employees of U.S. Bank who worked at a U.S. Bank California in-

26  store branch, during a Sunday shift, during the period April 9, 2003, through the date of

1  judgment in that case; and (2) all hourly employees of a U.S. Bank who worked a shift of more

2  than five hours at a U.S. Bank California in-store branch during the same period.  DUF 14.

3  Plaintiff Prieto was a member of these classes.  DUF 15.

4           On January 26, 2010, Class Notice was sent to all class-members (those who held

5  a non-exempt position in California during the relevant time period), including Prieto, at her

6  most recent address.  DUF 16, 18.  The notice was addressed to "ALL PERSONS WHO ARE

7  EMPLOYED OR WHO, SINCE APRIL 9, 2003, HAVE BEEN EMPLOYED IN THE STATE

8  OF CALIFORNIA BY U.S. BANK AS AN HOURLY-PAID IN-STORE EMPLOYEE."  Def.'s

9  Request for Judicial Notice (DRJN), ECF No. 38-2 at 6.  The notice identified the two classes

10  conditionally certified by the court and described the relief sought on behalf of the class

11  members.  DRJN, ECF No. 38-1 at 7.  It included information on opting-out of the class:

> 12  **If you wish to remain a Class Member and have your interests represented by Class Counsel approved by the Court, you do not need to take any action at this time.**  You will receive further
> 13  notices as the case progresses.  If you remain a Class Member, you will be legally bound by any decision, favorable or unfavorable, in
> 14  this lawsuit.  If you remain a Class Member, and the Plaintiffs obtain money as a result of a trial or a settlement with respect to an
> 15  issue that pertains to you, you will be notified about the procedure
> 16  for submitting a claim for payment.

17  ECF No. 38-1 at 8 (emphasis in original).  It continued "**if you want to exclude yourself from**

18  **the Class, you must make your request in writing**. . . .  If you do not exclude yourself from

19  this lawsuit, any judgment rendered by the Court or jury, whether favorable or not, will be

20  binding upon you."  *Id*. (emphasis in original).

21           Plaintiff did not opt out of the class.  DUF 19.

22           The parties settled the *Ross* case in 2010, and on March 31, 2010, entered into a

23  Settlement Agreement on behalf of all members of the conditionally certified classes.  DUF 20-

24  21.  The *Ross* settlement defined all "Participating Class Members" as those class members "to

25  whom notice shall have been sent according to the terms of this Settlement Agreement, who do

26  not timely opt out."  DUF 22.

The *Ross* agreement provides in pertinent part:

> 6.  Release of Claims.  Prior to receiving a Class Payment, a Participating Class Member will be required to sign a Claim Form and Release of Claims which includes a release under federal, state, and local law relating to these claims: payment of wages, payment of overtime wages; payment of minimum wages; provision of meal and rest periods; payment of wages in a timely manner; reconciliation from wages resulting from the Bank's "pay current" practice; itemized wage statements; failure to timely pay all wages due at the time of termination; breach of contract; conversion; unfair business practices related to the released wage and hour claims; liquidated damages under the Fair Labor Standards Act; penalties under the California Labor Code, including PAGA penalities and waiting time penalties; and claims for costs, interest and attorneys' fees relating to any of these claims.  The release will include all claims from April 9, 2003, through the date that the Court issues its final order granting approval of the Parties' Joint Stipulation of Settlement and Release (the "Effective Date").

ECF No. 39-4 at 17.  The settlement agreement is fully integrated and states it sets forth the "entire understanding" of the parties and can be amended only by a writing signed by all the parties.  DUF 25.

> A "Clarification Regarding Settlement Agreement" was filed on May 12, 2010:
>
> Section 6 of the Settlement Agreement states in part: "Prior to receiving a Class Payment, a Participating Class Member will be required to sign a Claim Form and Release of Claims which includes a release under federal state and local law relating to these claims: payment of wages; . . . ; breach of contract; conversion; unfair business practices related to the released wage and hour claims; . . . ."
>
> Similarly, Section 9.3 of the Settlement Agreement states in part: "Notice to the Class Members will, at a minimum: . . . c. Advise Participating Class Members that, if approved, the settlement will release under federal, state and local law claims relating to: Payment of wages; . . . breach of contract; conversion; unfair business practices related to the released wage and hour claims; . . . ."

/////

/////

1        The words "breach of contract; conversion; unfair business
practices related to the released wage and hour claims in Sections
2        6 and 9.3 of the Settlement Agreement were intended by the
parties to state, and should be interpreted to state, "breach of
3        contract,

4        conversion and unfair business practices related to the released
wage and hour claims."

5

6  ECF No. 39-5 at 6.

7        The Northern District granted preliminary approval of the proposed settlement on

8  May 7, 2010, and authorized that notice be sent to the class members.  DUF 28.  The class

9  administrator mailed a notice to plaintiff on July 5, 2010.  DUF 29.  This notice says in pertinent

10  part:

11        **<u>Release of Claims</u>**.  If approved, the Settlement will release claims
under federal, state, and local law relating to:  payment of wages,
12        payment of overtime wages; payment of minimum wages;
provision of meal and rest periods; payment of wages in a timely
13        manner; reconciliation from wages resulting from the Bank's "pay
current" practice; itemized wage statements; failure to timely pay
14        all wages due at the time of termination; breach of contract;
conversion; unfair business practices related to the released wage
15        and hour claims; liquidated damages under the Fair Labor
Standards Act; penalties under the California Labor Code,
16        including PAGA penalties and waiting time penalties; and claims
for costs, interest and attorneys' fees relating to any of these claims
17        through the effective date of the Settlement.

18  ECF No. 38-2 at 16 (emphasis in original).  There is no carve-out in the release for claims that

19  class members might have for periods when they worked for U.S. Bank in non-class positions

20  during the relevant time period.  DUF at 32.  The notice says that "the judgment will bind all

21  Class Members," and informed class members of their right to object to the settlement by

22  August 5, 2010, or to enter the action with their own counsel.  ECF No. 38-2 at 17; DUF at 34-

23  35.  Plaintiff did not object or enter the action on her own.

24        The Northern District granted final approval of the *Ross* settlement on

25  September 29, 2010, after finding that the settlement was fair, reasonable and adequate and that

26  plaintiffs had satisfied the standards for final approval of a class action settlement under federal

1   law. DUF 27-38.[4]  The court found that the notices met the necessary procedural requirements

2   and complied with due process.  DUF 40.  It finally found that "all Class Members who did not

3   timely and properly execute a Request for Exclusion are bound by this judgment and Order."

4   DUF 41.  It again defined the class as "any and all non-exempt employees of U.S. Bank who

5   worked at a U.S. Bank California in-store branch from April 9, 2003, through May 7, 2010," and

6   a "Participating Class Member" as one "who did not properly and timely execute a Request for

7   Exclusion."  ECF No. 39-7 at 5.  The court concluded:

8               With this final approval of the proposed settlement, it is hereby
                ordered that, as to all Participating Class Members, any and all
9               federal, state, and local law claims against U.S. Bank from April 9,
                2003, through the date the Court signs this Order, relating to:
10              payment of wages; payment of overtime wages; payment of
                minimum wages; provision of meals and rest periods; payment of
11              wages in a timely manner; reconciliation from wages resulting
                from the Bank's "pay current" practice; itemized wages
12              statements; failure to timely pay all wages due at the time of
                termination; breach of contract, conversion, and unfair business
13              practices related to the wage and hour claims; liquidated damages
                under the Fair Labor Standards Act; penalties under the California
14              Labor Code, including PAGA penalties and waiting time penalties;
                and claims for costs, interest and attorneys' fees relating to any of
15              these claims, are hereby released.

16   ECF No. 39-7 at 6.

17   IV.  Analysis

18              Defendants argue that the release in the *Ross* class action covers plaintiff's claims

19   in the instant action.  Plaintiff counters that the question is one of the preclusive effect of the

20   judgment and that she is not barred under principles of res judicata and/or collateral estoppel.

21   _____

22       [4]  Plaintiff has submitted a "Supplemental Declaration" from class counsel Kevin Barnes,
     filed in support of the final approval motion in *Ross*.  Barnes recounts a conversation with
23   counsel in a case of an hourly employee who later became an exempt employee and that
     lawyer's concern that the *Ross* settlement would bind his client.  Barnes says, "I want to put it on
24   the record that our case in no way releases any workweek of a US Bank employee in an exempt
     position as that was not litigated in this case and is not released."  ECF No. 42-3 at 9 ¶ 3.
25   Although parol evidence may be admissible in a challenge to the scope of a release "to prove a
     meaning to which the language is 'reasonably susceptible,'" *Winet v. Price*, 4 Cal.App.4th 1159,
26   1167 (1992), the court does not find it necessary to consider Barnes' declaration to resolve the
     issues in this case.

1    She adds that finding the *Ross* settlement preclusive would violate her due process right to

2    reasonable notice.  Defendants contend that even if the issue must be analyzed under doctrines of

3    preclusion, res judicata bars the instant action and the *Ross* notice complied with due process.

4            The parties' contentions frame the issues in this case, for "a suit can be barred by

5    the earlier settlement of another suit in either of two ways:  res judicata or release." *Nottingham*

6    *Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31 (1st Cir. 1991); *see also Reppert v. Marvin*

7    *Lumber and Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).  Cases examining the scope of class

8    action settlements, even those using the word "release," often employ the doctrines of claim or

9    issue preclusion.  *See, e.g., Villacres v. ABM Industries*, 189 Cal. App. 4th 562, 588 (2010);

10   *Louie v. BFS Retail and Commercial Operations, LLC*, 178 Cal. App. 4th 1544, 1550, 1559

11   (2009).  This court will address both the impact of the release and the preclusive impact of the

12   prior judgment.

13        A. <u>Release</u>

14           The *Ross* settlement agreement includes a paragraph entitled "Release Of Claim,"

15   which covers "claims under federal, state, and local law relating to:  payment of wages, payment

16   of overtime wages; payment of minimum wages; provision of meal and rest periods; payment of

17   wages in a timely manner; reconciliation from wages resulting from the Bank's 'pay current'

18   practice."  Neither party addresses whether state or federal law controls the determination

19   whether the underlying claims are barred by a release; defendant cites both state and federal

20   cases, while plaintiff's discussion of the release is not extensive.

21           A class action release is a contract and contract interpretation is ordinarily a

22   question of state law.  *Navarro v. Mukasey*, 518 F.3d 729, 733 (9th Cir. 2008); *Unova v. Acer*

23   *Inc.*, 363 F.3d 1278, 1280 (9th Cir. 2004).  Under California law, a contract "'must be so

24   interpreted as to give effect to the mutual intention of the parties as it existed at the time of

25   contracting.'"  *Id.* at 1281 (quoting Cal. Civ. Code § 1636); *Brinton v. Bankers Pension*

26   *Services, Inc.*, 76 Cal. App. 4th 550, 559 (1999).  The court should rely on the writing in

                                                   9

determining the parties' intention, yet may also consider "'the circumstances under which it was made, and the matter to which it relates.'" *Unova v. Acer, Inc*., 363 F.3d at 1281 (quoting CAL. CIV. CODE § 1647).

Even when relying on California contract principles in interpreting a class release, the Ninth Circuit has cautioned that while a defendant "may have drafted the settlement agreement to include as broad a release as possible, the release would have only been *enforceable* as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, but depending upon the same set of facts.'" *Williams v. Boeing Co*., 517 F.3d 1120, 1134 (9th Cir. 2008) (emphasis in original); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 748 (9th Cir. 2006) (a settlement release encompasses a plaintiff's claims if they arise from an identical factual predicate as the claims asserted by the settling party in the previous litigation); *see also generally Trotsky v. Los Angeles Federal Savings & Loan Ass'n*., 48 Cal. App. 3d. 134 (1975) (a settlement term outside the scope of the complaint was not valid).  And while it is true, as defendant argues, that a class settlement may cover claims that were not presented and even not presentable in the action, the principle applies "only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir.), *cert. denied* 131 S.Ct. 506 (2010) (internal citation & quotation marks omitted).  As one court has observed this "identical factual predicate" doctrine is part of the court's interpretation of which claims fall within the terms of the settlement.  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, __ F. Supp. 2d ___, 2012 WL 1029502, at *17 (N.D. Cal. Mar. 26, 2012).

In this case, the *Ross* release and settlement agreement must be interpreted to effectuate the intent of the parties in the context of the overall action.  As noted, the *Ross* release bound class members, who were defined as all hourly employees of U.S. Bank who worked at a U.S. Bank California in-store branch, during a Sunday shift, during the period April 9, 2003, through the date of judgment in that case; and (2) all hourly employees of a U.S. Bank who

1   worked a shift of more than five hours at a U.S. Bank California in-store branch during the same

2   period.  The settlement agreement and release and the "matter to which it relates" concerns only

3   the overtime claims of non-exempt employees.

4          Any claims about overtime payment due to exempt employees who were

5   misclassified arise from a different factual predicate.  All non-exempt employees are entitled to

6   overtime wages.  *Harris v. Investor's Business Daily, Inc*., 138 Cal. App. 4th 28, 37 (2006);

7   CAL. LAB. CODE § 510.  Determining such an employee's entitlement to wages requires an

8   examination of the hours worked.  An exempt employee, however, does not earn overtime.

9   *Arenas v. El Torito Restaurants*, 183 Cal. App. 4th 723, 726 (2010); CAL. LAB. CODE § 515 (a).

10  When an exempt employee alleges that she was misclassified as exempt based only on her job

11  description rather than on the actual duties she performed, a court will have to consider not only

12  the hours worked but also the nature of that employee's duties.  *Id*. at 733-34.  Because of the

13  additional factual inquiries, t hese claims do not arise from the identical factual predicate as that

14  made part of the *Ross* settlement.

15         B.  <u>Res Judicata</u>

16         Plaintiff argues that federal common law governs the preclusive effect of the *Ross*

17  settlement.  ECF No. 42 at 10 n.7.  Neither party addresses whether state or federal law controls

18  the determination whether the underlying claims are barred by a release; plaintiff cites both state

19  and federal cases, while defendant's discussion of the release is not extensive.

20         Plaintiff is correct that federal common law governs the preclusive effect of a

21  federal court judgment.  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  This does not mean,

22  however, that federal preclusion law controls in every situation.  In *Semtek Int'l. v. Lockheed*

23  *Martin Corp.*, 531 U.S. 497, 508 (2001), the Court held that the preclusive effect of the order of

24  a federal court, sitting in diversity, was governed by federal common law, which in turn can

25  incorporate the state law.  *See also Taylor*, 553 U.S. at 891 n.4.  As the *Semtek* court explained,

26  /////

11

> Since state, rather than federal, substantive law is at issue there is
> no need for a uniform federal rule. . . . This is, it seems to us, a
> classic case for adopting, as the federally prescribed rule of
> decision, the law that would be applied by the state courts in the
> State in which the federal diversity court sits.

*Semtek*, 531 U.S. at 508.  The court recognized that this general rule would not apply "in situations in which the state law is incompatible with federal interests."  When there is no such conflict, however, "there is no conceivable federal interest" in giving a determination "more effect in other courts than the California courts themselves would impose."  *Id*. at 509.

Ninth Circuit authority suggests that California state courts determine the preclusive effect of a prior federal court judgment by applying federal standards.  *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("California law . . . determines the res judicata effect of a prior federal court judgment by applying federal standards"); *Murray v. Sears, Roebuck and Co*., No. 09-05744 CS, 2010 WL 3490214, at *2 (N.D. Cal. 2010) (same).  California case law is not in accord:  California courts will determine the preclusive effect of a federal diversity judgment under California law if that law is "compatible with federal interests."  *Louie v. BFS Retail and Commercial Operations, LLC*, 178 Cal. App. 4th 1544, 1553-54 (2009); *Johnson v. GlaxoSmithKline, Inc*., 166 Cal. App. 4th 1497 (2008) (applying California law without discussing whether prior federal action was based on diversity); *see generally Rehabilitation Associates, Inc. v. Nautilus, Inc*., Case No. 09-CV-744 JLS (AJB), 2011 WL 1086066, at *5-6 (S.D. Cal. 2011) (collecting cases; declining to apply federal preclusion doctrine).  Jurisdiction in the *Ross* action was based on federal question and supplemental jurisdiction, as well as on the diversity provisions of the CAFA.  The settlement itself is based largely on the state law claims advanced by the named plaintiffs.  In these circumstances, California's preclusion doctrines should govern the resolution of the issues.  8B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4472 at 374 (2d ed. 2002).  But even if the law of federal preclusion applies, the result is the same.

/////

1    "In California, res judicata precludes a plaintiff from litigating a claim if: the

2   claim relates to the same 'primary right' as a claim in a prior action, the prior judgment was final

3   and on the merits, and the plaintiff was a party or in privity with a party in the prior action."

4   *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985).  Under California's

5   primary rights theory:

6            [A] cause of action is (1) a primary right possessed by the plaintiff,
              (2) a corresponding primary duty devolving upon the defendant,
7            and (3) a harm done by the defendant which consists of a breach of
              such primary right and duty. . . .[I]f two actions involve the same
8            injury to plaintiff and the same wrong by the defendant, then the
              same primary right is at stake even if in the second suit the plaintiff
9            pleads different theories of recovery, seeks different forms of relief
              and/or adds new facts supporting recovery.

10

11   *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (internal citations, quotations omitted).

12   The critical focus is on the harm suffered.  *Id.*  "If the 'primary right' sought to be vindicated in a

13   subsequent suit is the same as that in an earlier suit, the second action will be precluded under

14   California law."  *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004) (quoting *Mycogen*

15   *Corp. v. Monsanto Co.*, 28 Cal.4th 888 (2002)).  A single cause of action arises from the harm

16   suffered rather than on the legal theory advanced and does not depend upon the remedy sought.

17   *Slater v. Blackwood*, 15 Cal.3d 791, 797 (1975); *McDowell v. Watson*, 59 Cal. App. 4th 1155,

18   1158 (1997).  Moreover, "even though two suits involve the same nucleus of facts, they do not

19   necessarily raise the same cause of action under California law."  *Maldonado*, 370 F.3d at 953.

20            Plaintiff does not dispute the fact that there was a final judgment in the *Ross* case,

21   but argues that the instant cause of action is different than that litigated in *Ross*.  Defendant

22   insists that the same primary right is involved: the right to be compensated for earned overtime

23   and for meal and rest periods that were denied.  ECF No. 44 at 14.  To resolve this dispute, the

24   court "must compare the two actions, looking at the rights which are sought to be vindicated and

25   the harm for which redress is claimed."  *Citizens for Open Access to Sand and Tide, Inc. v.*

26   *Seadrift Association*, 60 Cal. App. 4th 1053, 1067 (1998).

1    　　　　The plaintiffs in *Ross*, hourly employees of U.S. Bank, alleged that they were

2    regularly deprived of "duty-free rest periods" and "uninterrupted meal periods," were not

3    permitted to leave the premises during meal periods, and were not paid for the missed rest

4    periods or interrupted meal periods or for off-the-clock work.  ECF No. 39-2 at 6 ¶ 16.  In

5    addition, they alleged that U.S. Bank improperly made deductions from the plaintiffs' wages

6    under the heading "Lost Time" and permitted them to work off the clock when opening or

7    closing the branch.  *Id*.  In addition, plaintiffs were often forced to clock out after eight hours so

8    that defendant could avoid paying overtime.  *Id*.  When plaintiffs did work overtime, defendant

9    failed to pay them the increased hourly rate for time in excess of forty hours a week.  *Id*. at 5-6.

10   Other plaintiffs were not given all wages due within seventy-two hours of their last days of

11   employment.  *Id*. at 5.  They alleged that defendant failed to pay wages, failed to pay minimum

12   wage, failed to pay overtime to hourly employees, made unauthorized deductions from their

13   wages, failed to provide rest and meal periods, failed to pay wages promptly at the end of

14   employment, breached a contract, failed to provide accurate wage statements, and engaged in

15   unfair competition.  *Id*. at 17-28.

16   　　　　The first amended complaint in the instant case alleges that defendant has a policy

17   of classifying certain employees as exempt, which resulted in its refusal to pay plaintiff overtime

18   wages stemming from its failure to provide her meal and rest periods.  ECF No. 31 at 2.  Plaintiff

19   raises causes of action similar to those in *Ross*:  failure to pay overtime, failure to provide rest

20   and meal periods, failure to pay her for these periods promptly after she left defendant's

21   employment, and unfair competition.

22   　　　　There is much overlap in the two actions, starting with the similarity of the facts

23   and the Labor Code violations presented through the requests for payment of lost wages.  In the

24   case proceeding in this court, however, the harm flowed from defendant's alleged

25   misclassification of plaintiff and could have occurred even if it honored all its obligations

26   concerning meal and rest periods and off the clock work to hourly employees; in *Ross*, the harm

14

1    flowed from defendant's refusal to pay hourly employees' wages due under the provisions of the

2    Labor Code.  The harm in the instant case is the misclassification, which led to the alleged

3    failure to pay, while the harm in *Ross* was the failure to pay.  *See Arenas v. El Torito*

4    *Restaurants*, 183 Cal. App. 4th at 733-34.  Because the actions involve different primary rights,

5    res judicata does not bar the instant suit.

6              IT IS THEREFORE ORDERED that

7              1.  Defendant's motion for reconsideration (ECF No. 51) is granted;

8              2.  The prior ruling on summary judgment (ECF No. 49) is vacated; and

9              3.  Upon reconsideration, the motion for summary judgment (ECF No. 38) is

10   denied.

11   DATED:  September 30, 2012.

12

13                                                    _____
                                                      UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26